CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
NOV 14 2011
JULIA C. DUDLEY, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM K. SCHANCK,<br>Petitioner, | ) | Civil Action No. 7:11-cv-00378 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| C. ZYCH,<br>Respondent. | ) | By:   Hon. Jackson L. Kiser<br>Senior United States District Judge |

William K. Schanck, a federal prisoner proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. Petitioner alleges that his institutional conviction, which resulted in the loss of good time credit, was obtained in violation of due process. Respondent moves to dismiss the petition, and petitioner responded, making the matter ripe for disposition. After reviewing the record, I dismiss the petition for a writ of habeas corpus.

I.

On May 16, 2010, a fight occurred in the recreation yard of the United States Penitentiary in Victorville, California, that lasted about fifteen seconds.[1] Staff ordered all inmates in the area of the fight to remain on the ground until a Lieutenant could verify their identities. During the initial assessment right after the fight, staff considered petitioner to not have been involved. However, another fight occurred in a different part of the prison during the initial assessment, and staff ordered all the inmates to "be locked up" until staff responded to the new fight and had time to investigate the earlier fight.

On June 14, 2010, Lieutenant Halstead prepared an incident report accusing petitioner of "fighting with another person." His report indicated that he saw a video recording of the fight

---

[1] Petitioner was confined within this district when he filed his habeas petition and remains here. See 28 U.S.C. § 2241(a).

that showed petitioner striking several inmates in the body and face with a closed fist. On June 15, 2010, petitioner received a copy of the incident report and was advised of his rights about the charges. Petitioner stated that he did not hit anyone and wanted to see the video recording.

On June 17, 2010, a Unit Discipline Committee ("UDC") Hearing was held, during which petitioner argued that the incident report was a lie and that staff did not see him do anything. The UDC referred the incident report to the Discipline Hearing Officer ("DHO") to adjudicate the charge. Following the UDC Hearing, petitioner received an "Inmate Rights at Discipline Hearing" form and a "Notice of Discipline Hearing Before the DHO" form. Petitioner indicated he wished to have D. Sorrels, his case manager for the past couple of years, as his staff representative during the DHO hearing. Petitioner did not request any witnesses but asked that staff review the video recording.

On July 15, 2010, the DHO began the hearing, and Sorrels appeared as petitioner's staff representative. Sorrels told the DHO that he tried to review the video but was told it no longer exists. Although petitioner denied the charge, the DHO found petitioner guilty of fighting with another person. The DHO relied upon Halstead's written statement that he reviewed the video recording and determined that petitioner fought with at least one other inmate by striking someone with a closed fist in the body and face. The DHO noted that, although petitioner denied fighting, she based her decision on the Halstead's eyewitness observations of the fight's recording. The DHO sanctioned petitioner by revoking twenty-seven days of good time credit and six months of e-mail and telephone privileges and recommending thirty days in disciplinary segregation and a disciplinary transfer. The DHO recommended the sanctions because of the severity of the offense, the threat to the security of the institution and safety of others, petitioner's

inability to maintain clear conduct at the institution, and to try to correct petitioner's future behavior. Petitioner received a copy of the DHO report on July 20, 2010, and unsuccessfully appealed the conviction via available administrative remedies.

After petitioner's DHO hearing, another inmate had his DHO hearing for the same fight. However, that inmate was acquitted, allegedly because of the delay in delivering the incident report, the videotape being destroyed, and Halstead being unsure about which inmates were involved. Petitioner confronted the DHO about this acquittal, and she allegedly told him that he should appeal his conviction because it would then be dismissed.

Petitioner argues that he was prejudiced by the conviction because it would make him ineligible for "a type of parole" pursuant to the Second Chance Act. Petitioner says he is fifty-five years old, has not committed an act of violence during his approximate twenty years of incarceration, and would be eligible for "a type of parole" if it were not for this one institutional conviction for fighting.

II.

To prove that he is entitled to relief under § 2241, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). For prison disciplinary proceedings resulting in the loss of good time credit, due process requires prison officials provide an inmate with: (1) advanced written notice of the claimed violation; (2) disclosure of evidence against the inmate; (3) the right to present documentary evidence and to call witnesses, unless the hearing officer finds good cause not to allow a witness; (4) a neutral, detached hearing body; and (5) a written statement by the fact finder about the evidence relied upon and the reasons for the disciplinary action taken. Wolff v.

McDonnell, 418 U.S. 539, 563-71 (1974). Due process is satisfied when these minimum requirements have been met and when there is "some evidence" in the record "that could support the conclusion reached." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). Determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." Id. Furthermore, "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." Id. at 456.

Petitioner received the protections afforded by Wolff. Petitioner had written notice of the charges more than twenty-four hours before the DHO hearing because he received the incident report on June 15, 2010, and the DHO hearing was held about a month later. Petitioner used his opportunity to make a statement at the DHO hearing to deny the charge. Petitioner's requested staff representative appeared on his behalf at the hearing and noted that the video recording was no longer available. No evidence exists to question the impartiality of the DHO, who provided a written statement explaining the evidence relied upon and the reasons for the imposed sanctions. Although petitioner denied the charge, the DHO relied on Halstead's eyewitness account of viewing the video recording of the fight and identifying petitioner as a person who punched at least one other inmate in the face and body with a closed fist. Thus, some evidence appeared in the record that indicates petitioner committed the charged offense. Although petitioner had the opportunity to call any witness, he did not call Halstead as a witness, and the DHO could rely on Halstead's incident report. Furthermore, a prison disciplinary proceeding does not invoke a right to confront or cross-examine adverse witnesses. See Ponte v. Real, 471 U.S. 491, 510 (1985)

(Marshall, J., dissenting); Baxter v. Palmigiano, 425 U.S. 308, 322 n.5 (1976) (stating that that there is no general right to confront and cross-examine adverse witnesses in the prison context); Zimmerlee v. Keeney, 831 F.2d 183, 187 n.2 (9th Cir. 1987) (per curiam) ("Confrontation and cross-examination are not generally required and are left to the sound discretion of the prison official."). See also Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2531, 2533-34 (2009) (stating Sixth Amendment right to confront an accuser is afforded in only criminal prosecutions); Wolff, 418 U.S. at 568 ("[I]t does not appear that confrontation and cross-examination are generally required in this context. We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination").

Petitioner also complains that he did not receive the incident report within twenty-four hours after the fight occurred. Title 28 C.F.R. § 541.15(a), the federal regulation in effect at the time of the disciplinary action, simply provided, "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." 28 C.F.R. § 541.15(a) (2010).[2] This language was not mandatory, and thus, petitioner did not have a due process interest in receiving an incident report within twenty-four hours of the fight. See Smith v. Bureau of Prisons, No. 7:03CV00662, 2004 U.S. Dist. LEXIS 28904, at *15-16, 2004 WL 3397938, at *5 (W.D. Va. Oct. 22, 2004), adopted, 2004 U.S. Dist. LEXIS 28900, *1-2, 2004 WL 3397938, at *1 (noting that there is no liberty interest under Wolff to receive incident reports within a certain time period and that BOP regulations provide only that the reports should

---

[2] This section was eliminated after petitioner's DHO hearing, and the related requirements are now described in 28 C.F.R. § 541.5(a).

"ordinarily" be given to an inmate within 24 hours of the incident). Furthermore, a Bureau of Prisons ("BOP") official's failure to abide by BOP regulations by itself does not present a constitutional claim. See United States v. Caceres, 440 U.S. 741, 751-52 (1978) (stating a violation of an agency regulation does not immediately constitute a constitutional claim). Petitioner fails to describe any prejudice of not receiving the report within twenty-four hours because even if the video recording was not deleted because Halstead reviewed the tape and saw petitioner strike another inmate. See Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) (requiring petitioner to be prejudiced by a failure to follow prison regulation); White v. U.S. Parole Comm'n, 856 F.2d 59, 61 (9th Cir. 1988) (same); Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994) ("[T]his court is reluctant to overtax and/or hamstring officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate."); Borre v. Garrison, 536 F. Supp. 76 (E.D. Va. 1982).

  Petitioner alleges that his incident report should be expunged because other inmates' related incident reports were expunged. The DHO, however, affirms that she did not expunge any incident reports related to the fight because the video recording was not available, as petitioner alleges. Instead, the DHO recalls expunging one inmate's incident report because the reporting officer did not sufficiently detail how that inmate's conduct constituted "fighting" in violation of the institutional regulation. However, the evidence in petitioner's case indicates petitioner used a closed fist to strike an inmate in the head and body, which is sufficient information to find petitioner guilty of "fighting with another person," regardless of other inmates' charges.

Finally, although the Second Chance Act ("Act") gives the BOP the discretion to release certain inmates over 65 years old to home confinement, petitioner's arguments that he would otherwise qualify for the program in ten years when he becomes 65 years old is speculative. Moreover, the BOP has the discretion to select the inmates who can benefit from the Act, and an inmate does not have a constitutional right to be placed in a specific security classification or institution. Sandin v. Conner, 515 U.S. 472, 486-87 (1995). Thus, petitioner has no reasonable expectation to be a beneficiary of the Act.

### III.

For the foregoing reasons, I grant respondent's motion to dismiss and dismiss the petition for a writ of habeas corpus.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to petitioner and counsel of record for the respondent.

**ENTER**: This 14th day of November, 2011.

_____
Senior United States District Judge